IN the MATTER OF the GUARDIANSHIP &
PROTECTIVE PLACEMENT OF N.N.: N.N.,
Appellant,

v.

COUNTY OF DANE, Respondent.

Court of Appeals

*No. 86–1488. Submitted on briefs April 10, 1987.—Decided
May 7, 1987.*

(Also reported in 409 N.W.2d 388.)

For the appellant the cause was submitted on the briefs of *Kenneth P. Casey,* assistant state public defender.

For the respondent the cause was submitted on the brief of *Cal W. Kornstedt,* corporation counsel, and *Arnold N. Rusky,* assistant corporation counsel.

There was a brief by *Richard J. Auerbach* and *Auerbach & Porter,* of Madison guardian *ad litem.*

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.   N.N. appeals from an order placing her under general guardianship and imposing protective placement in a locked hospital ward pursuant to sec. 55.06(9)(a), Stats. She raises two issues: (1) Does the trial court have jurisdiction to hold the final hearing on a petition for protective placement after expiration of the thirty-day limitation in sec. 55.06(11)(c), Stats?; and (2) Did the trial court abuse its discretion in ordering placement without appointing a permanent guardian? Because we hold that the statutory time limit is jurisdictional, we reverse on that ground and need not consider the second issue.

The facts are not in dispute. N.N. was taken into custody on December 17, 1985, under the emergency detention and involuntary commitment provisions of the Mental Health Act, ch. 51, Stats. At the probable cause hearing on December 20, the presiding court commissioner converted the proceeding into one for guardianship and protective placement pursuant to secs. 51.20(7)(d) and 51.67 and found probable cause to proceed under sec. 55.06, Stats., the protective placement law. He then ordered that N.N. be temporarily placed at the Mendota Mental Health Institute pending final hearing pursuant to sec. 55.06(11)(c) which states: "Upon a finding of probable cause ... the court may order temporary placement up to 30 days pending the hearing for a permanent placement ...."

On January 22, 1986, thirty-three days after the December 20 probable cause hearing, the trial court convened the final hearing. N.N. did not appear at the hearing but remained confined at Mendota. Her guardian ad litem advised the court that because of N.N.'s "potentially—fairly strong objections to what

65

was being proposed" for her, he had requested the appointment of independent counsel, and one had been appointed only a few days earlier. Because N.N.'s new attorney had not yet been able to confer with her, the guardian ad litem proposed that the hearing be continued for a brief period of time. The attorney concurred, and the court adjourned the hearing for two weeks.

On the continued date, February 5, 1986, N.N. moved to dismiss the petitions on grounds that the court lost jurisdiction over the matter when the final hearing was not held within the "absolute" thirty-day time limit. The court denied the motion and the hearing proceeded. At its conclusion on February 7, 1986, the court ruled that the petitions for guardianship and protective placement in a locked ward should be granted. However, it declined to appoint a permanent guardian when the petitioner's counsel stated that she did not have anyone to nominate for the position. Fearing that the designated institution would not accept N.N. without a guardian, the court appointed the guardian ad litem as her temporary guardian for the sole purpose of signing the necessary admission papers. No guardian has been appointed for N.N. to this date.

N.N. argues that sec. 55.06(11)(c), Stats., mandates a final hearing within thirty days and that the temporary placement cannot exceed that time limit.[1]

---

[1] N.N. also contends that the trial court lost its authority to proceed in the case when no hearing was held within fourteen days of her initial detention, as required by sec. 51.20(7)(c), Stats. That section requires the court to schedule a final hearing within fourteen days of finding probable cause that a person should be involuntarily committed under sec. 51.20(1)(a). It applies only to involuntary commitment proceedings, however, and N.N.'s case

In *State ex rel. Lockman v. Gerhardstein,* 107 Wis. 2d 325, 320 N.W.2d 27 (Ct. App. 1982), the court considered a similar statute, sec. 51.20(7)(c), Stats., which sets a time limit for the final hearing in involuntary commitment proceedings. The statute provides that if the court finds probable cause to believe that the allegations in the involuntary commitment petition are true, "it shall schedule the matter for hearing within 14 days from the time of detention ...." Lockman contended that once the fourteen days passed without a final hearing, the court lost all jurisdiction over her. We agreed, rejecting the state's argument that the statute was not jurisdictional because it was directory, rather than mandatory, and holding that the fourteen-day requirement was "mandatory and cannot be varied at the discretion of the trial court." *Id.* at 329–30, 320 N.W.2d at 29–30. In so ruling, we noted the obvious injury suffered by one "who is incarcerated and deprived of her liberty" while awaiting a final hearing on her status. *Id.* at 330, 320 N.W.2d at 30.

The guardian ad litem argues that sec. 55.06(11)(c), Stats., only limits the duration of prehearing placement and has nothing to do with the timing of the hearing, which may be held at any time. If the thirty days expire prior to any hearing, he argues, N.N. would be free to seek release from confinement through habeas corpus or other appropriate legal remedy. We are not persuaded.

was converted to a guardianship/protective placement proceeding. N.N.'s probable cause hearing proceeded under ch. 55, Stats., and the involuntary commitment procedures of ch. 51 simply do not apply.

67

If, as suggested, N.N. had a right to be released after expiration of the thirty days, it was not a self-executing right but one dependent not only upon her recognition of its existence, but also upon the institution of legal proceedings to enforce it. The determination that there is probable cause to believe that a person is a fit subject for protective placement is the equivalent of a finding that he or she is probably, by reason of chronic mental illness or similar incapacities, "so totally incapable of providing for his or her own care ... as to create a substantial risk of serious harm to oneself or others." Sec. 55.06(2)(c), Stats. It is tantamount to a presumption of incompetence, and we do not believe such a person may, on his or her own, be expected to understand and vindicate the right to release through litigation or otherwise. Nor does it make sense to us that a person who has been found to be probably dangerous to herself or others due to mental illness or similar disability should be released from temporary protective custody to await a hearing to be scheduled at some unknown time in the future. Such an interpretation of the statute would be inconsistent with its stated goal of providing help and assistance to those in need of protective services. Sec. 55.001.

In *Karow v. Milwaukee County Civil Serv. Comm.*, 82 Wis. 2d 565, 572, 263 N.W.2d 214, 217–18 (1978), the supreme court stated:

> We have said that a time limit may be construed as directory when allowing something to be done after the time prescribed would not result in an injury. But where the failure to act within the statutory time limit does work an injury or wrong, this court has construed the time limit as mandatory. [Citation and footnote omitted.]

The *Lockman* court, after quoting the above passage from *Karow,* pointed to cases where suspension from employment or loss of the use of an automobile were considered to be the type of "injury" warranting interpretation of a statutory time limit as mandatory. *Lockman,* 107 Wis. 2d at 329–30, 320 N.W.2d at 29–30, citing *Karow, supra,* and *State v. Rosen,* 72 Wis. 2d 200, 208, 240 N.W.2d 168, 172 (1976).

Temporary placement under ch. 55, Stats., is an involuntary restraint on the individual's freedom. Construing sec. 55.06(11)(c) as directory, thus allowing both the hearing and the proposed ward's "temporary" detention to continue indefinitely, would be both cruel and injurious. One who is incarcerated and deprived of her freedom pending a final hearing on her status suffers substantial injury. We conclude that sec. 55.06(11)(c) requires the final hearing to be held within thirty days of the probable cause hearing and that the trial court, whether in the exercise of its own discretion or on stipulation of the parties, lacks authority to enlarge that time limit or extend the temporary placement beyond it.[2] While our decision in

[2] The county concedes that sec. 55.06(11)(c), Stats., requires a hearing within thirty days. It argues, however, that N.N.'s counsel, by "agreeing" to the continuance at the January 22, 1986, hearing, waived any right to insist on compliance with the time limit. We reject the argument for two reasons.

First, the time limit is mandatory and neither counsel nor the trial court can "waive" compliance with it. Second, the thirty days had expired prior to the January 22 hearing, and we do not believe that N.N.'s attorney, who had just been appointed to represent her and who had not even seen her at the time of the hearing, can be said to have retroactively conferred jurisdiction on the court by reluctantly agreeing to the continuance in order to gain time to confer with his client. We will not infer waiver of such an important right under these circumstances.

this case requires dismissal of the petitions filed on January 10 and 30, 1986, it is not a bar to recommencement of proceedings for protective placement or such other remedies as may be appropriate.

Finally, because we base our holding on the language of the statute, we need not consider N.N.'s constitutional arguments or the court's failure to appoint a guardian.

*By the Court.*—Order reversed and cause remanded with directions to dismiss the petitions.